STATE ex rel COX,
*Appellant,*

*v.*

DAVIDSON INDUSTRIES, INC.,
*Respondent.*

(No. 77-5311, CA 15484)

620 P2d 942

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

K. Patrick Neill, Eugene, argued the cause for respondent. With him on the brief was Hersner, Hunter, Miller, Moulton & Andrews, Eugene.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

### JOSEPH, P.J.

Plaintiff brought this suit for an injunction against defendant Davidson Industries, Inc. (Davidson) to require it to restore Siboco Slough to its original condition (ORS 541-605 - 541.665). Plaintiff alleged that Davidson created a public nuisance[1] by constructing an earth fill dike in "waters of this state" without a permit from the State Division of Lands (Division).

Davidson owns a large parcel of property on the Suislaw River near the ocean on the Siboco Slough. Its use of the land primarily involves the timber covering the hills on each side of the slough. Cattle pasture on the flatlands. In 1977, Davidson constructed a dike on its land as a roadway across the slough to provide access to the timber and to reduce mileage for transporting the timber to mill. The dike was pierced at both ends by large culverts with tide gates. Davidson did not secure a permit from the Division for the construction of the dike. It believed that the fill was above the high tide line and that therefore a permit from the Division was not required.

The trial court dismissed the complaint:

"IT IS HEREBY CONCLUDED that the Plaintiff failed to prove that the dike was constructed upon waters of the State of Oregon.

"Furthermore, even if it were determined that the dike was constructed on waters of the State of Oregon, the encroachment is upon waters so minimally within the waters of the State, and such minimal damages have been done and will be done to the State of Oregon and its people that removal of the dike would not be appropriate. Weighing the equities of the case and the statutory considerations set forth in ORS 541.605 et seq, the appropriate order would be to require the removal of the tide gates and the installation of a three foot culvert in the center of the dike."

---

[1] ORS 541.645 provides:

"The removal of material from the beds or banks or filling any of the waters of this state without a permit issued under ORS 541.625, or in a manner contrary to the conditions set out in the permit, is a public nuisance."

The Division appeals, claiming that the trial court erred in finding that the fill was not constructed on waters of this state and in not ordering removal of the fill. It argues that the evidence showed that the fill was in fact within waters of the state and proposes three alternative arguments. It first claims that the fill is located below the line of mean higher high tide and is, therefore, within the waters of the state; second, that the fill is located below the highest predicted tide and is thus within the waters of the state; and, third, that the fill is constructed below the line of non-aquatic vegetation in the area and, therefore, is located within the waters of the state.

ORS 541.615(1) provides:

"Except as otherwise specifically permitted under ORS 541.605 to 541.665, no person or governmental body shall remove any material from the beds or banks or fill any waters of this state without a permit issued under authority of the Director of the Division of State Lands, or in a manner contrary to the conditions set out in the permit."

ORS 541.605(12), formerly 541.605(8), defines "waters of this state":

"'Waters of this state' means natural waterways including all tidal and nontidal bays, intermittent streams, constantly flowing streams, lakes and other bodies of water in this state, navigable and nonnavigable, including that portion of the Pacific Ocean which is in the boundaries of this state."

The complaint alleged "that Siboco Slough, an arm of the Siuslaw Bay, is a tidal Bay." It further alleged that "[d]efendant has not secured a permit from the Division of State Lands to place the fill" and "that a permit is required from the Division of State Lands to fill a tidal bay." It was also claimed that the area surrounding the dike exhibited other marine characteristics: "The area behind the dike is salt marsh lands and are *[sic]* an important element of a productive estuary to provide organic nutrients and food organisms that enrich and sustain the estuarine food chain."

Natural waterways, including tidal bays, are within the statutory definition of "waters of this state." ORS 541.605(12). To prove that the dike was constructed in

waters of the state, the Division was required only to prove its allegation that the dike was in a tidal bay. Whether the other kinds of marine areas ("estuary" and "salt marsh lands") are waters of this state is not the decisive issue.[2] If the Division proved that the dike was constructed in a tidal bay, the other allegations were surplusage.

■ The evidence shows that Siboco Slough, as a part of Siuslaw Bay, is generally subject to tidal influence, and Davidson acknowledges that the dike is in an area that is actually subject to tidal influence. Its own evidence of tidal frequency shows that normal tidal action, albeit infrequently, perhaps, reached above the elevation of the location of the dike. The dike prevents that tidal water from flooding areas landward of the dike, except to the extent permitted by the gates Davidson built into it.

Davidson claims that the dike is not within waters of the state because it was constructed landward of the mean higher high water line. Of course tidal action reaches elevations above the line of mean higher high water, so that line could not define the boundary of a tidal bay.[3] We conclude that the dike is constructed in a natural waterway, as defined in the statute.

■ The public policy of the Removal and Fill Law is expressed in ORS 541.610(1):

---

[2] At trial, much of both parties' evidence focused on whether the area surrounding the dike was in fact an estuary and on defining its upper (landward) boundary.

[3] By rule, the Division has defined its jurisdiction for filling and removal of materials. OAR 141-85-105(2) provides:

"ORS Chapter 541 pertains to the beds and banks of all waters of this state including lakes, streams, rivers, and the Pacific Ocean. The act shall apply to that portion of a natural water body lying below the level of bankful stage. Additionally, the act shall apply to all estuarine lands, including salt and tidal marshes, and other wetlands lying below the elevation at which significant woody vegetation (trees, etc.) ceases to grow because of frequent inundation."

Neither party questions the validity of this rule. The Division urges its application only as a definition of the upper boundary of an "estuary." Davidson does not suggest that the evidence shows that the dike is constructed above the "elevation at which significant woody vegetation (trees, etc.) ceases to grow because of frequent inundation."

"The protection, conservation and best use of the water resources of this state are matters of the utmost public concern. Streams, lakes and other bodies of water in this state, including not only water and materials for domestic, agricultural and industrial use but also habitats and spawning areas for game and food fish, avenues for transportation and sites for public recreation, are vital to the economy and well-being of this state and its people. Unregulated removal of material from the beds and banks of the waters of this state may create hazards to the health, safety and welfare of the people of this state. Unregulated filling in the waters of this state may result in interfering with or injuring public navigation, fishery and recreational uses of the waters. In order to provide for the best possible use of the water resources of this state, it is desirable to centralize authority in the Director of the Division of State Lands, and implement control of the removal of material from the beds and banks or filling of the waters of the state."

"Water resources" include "not only water itself but also aquatic life and habitats therein and all other natural resources in and under the waters of this state." ORS 541.605(7). The policy of protecting the state's water resources is implemented by forbidding filling without a permit in "waters of this state." The dike was constructed in state waters without a permit; it is, therefore, by the statute a public nuisance.[4]

■ The Division argues that the trial court erred in not ordering the removal of the dike. The trial court, by balancing the equities, concluded that even if the dike were constructed in waters of the state, its encroachment is minimal and minimal damage has resulted, so removal of the dike is not appropriate. The Division argues that the statutory scheme does not authorize the court to weigh the equities. It claims that the trial court is compelled as a matter of law, at least in this instance, to issue an injunction. The statute does not by express terms mandate injunctive relief. *See State ex rel Johnson v. Int. Harv.,* 25 Or App 9, 548 P2d 176, *rev den* (1976). We and the Supreme Court have held that in the absence of an indication of a strong public policy which requires the application of mandatory

---

[4] *See,* n 1, *supra.*

affirmative relief for its vindication the issuance of an injunction lies within the discretion of the court. *City of Portland v. Settergren,* 25 Or App 555, 549 P2d 1290 (1976); *see Frankland v. City of Lake Oswego,* 267 Or 452, 517 P2d 1042 (1974). The trial court here did not conclude that the state was entitled to no relief if the dike were a public nuisance; rather it limited the relief. Nonetheless, we conclude that that was error, for we do not believe that the court had discretion in this instance to allow the dike to remain in place. Even assuming that the court might in some cases have the power to do something other than simply implement the policy determinations of the agency *(sed quaere: McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979)), under the facts of this case the effect of limiting the relief short of removal and restoration would be to allow the continued beneficial enjoyment of a structure erected in direct contravention of the state's public policy. *See State ex rel Lucas v. Goss,* 23 Or App 501, 543 P2d 9 (1975). Moreover, under either of the two statutes under which the agency could have moved against the defendant, ORS 541.650[5] and 541.660,[6] the agency had

[5] ORS 541.650:

"If the director determines that material is being removed from or filling is occurring in any of the waters of this state without a permit issued under ORS 541.625, or in a manner contrary to the conditions set out in the permit, he may:

"* * * * *

"(6) Take appropriate action for the enforcement of his rules or orders promulgated as a result of any hearing. Any violation of ORS 541.605 to 541.665 or of any rule or order of the director under ORS 541.605 to 541.665 may be enjoined in civil abatement proceedings brought in the name of the State of Oregon; and in any such proceedings the director may seek and the court may award a sum of money sufficient to compensate the public for any destruction or infringement of any public right of navigation, fishery or recreation resulting from such violation. Proceedings thus brought by the director shall set forth the dates of notice and hearing and the specific rule or order of the director, together with the facts of noncompliance, the facts giving rise to the public nuisance, and a statement of the damages to any public right of navigation, fishery or recreation, if any, resulting from such violation."

[6] ORS 541.660:

"(1) In lieu of penal enforcement proceedings, proceedings to abate alleged public nuisances under ORS 541.645 may be instituted at law or in equity, in the name of the State of Oregon, upon relation of the Director of the Division of State Lands.

the power to seek removal and restoration with or without damages. It chose only removal and restoration, and it was entitled to do that. The court was not empowered to deny enforcement of the law.

Reversed and remanded with instructions to decree removal and restoration.

---

"(2) However, notwithstanding any other provisions of law, the director, without the necessity of prior administration procedures or hearing and entry of an order or at any time during such administrative proceedings if such proceedings have been commenced, may institute an action for legal or equitable remedies in the name of the State of Oregon to abate or restrain threatened or .existing nuisances under ORS 541.645, whenever such nuisances or threatened nuisances create an emergency that requires immediate action to protect the public health, safety or welfare. In any action brought under this section, the director may seek and the court may award a sum of money sufficient to compensate the public for any destruction or infringement of any public right of navigation, fishery or recreation resulting from an existing public nuisance under ORS 541.645. No temporary restraining order or temporary injunction or abatement order shall be granted unless the defendant is accorded an opportunity to be heard thereon at a time and place set by the court in an order directing the defendant to appear at such time and place, and to then and there show cause, if the defendant has any, why a temporary restraining order or temporary injunction or abatement order should not be granted. The order to show cause, together with affidavits supporting the application for such temporary restraining order, temporary injunction or abatement order, shall be served on the defendant as a summons. The defendant may submit counter-affidavits at such time and place. The director shall not be required to furnish any bond in such proceeding. Neither the State Land Board nor the Director of the Division of State Lands or the employes or duly authorized representatives of the division, shall be liable for any damages defendant may sustain by reason of an injunction or restraining order or abatement order issued after such hearing.